## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JAMES FONTENEAUX** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. H-05-4033** |
| **VS.** | § | |
| | § | |
| **SHELL OIL COMPANY and SHELL** | § | **JURY TRIAL DEMANDED** |
| **INFORMATION TECHNOLOGY** | § | |
| **INTERNATIONAL, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE KEITH ELLISON:

COMES NOW Plaintiff, James Fonteneaux, and files his Response to Defendants'
Motion for Summary Judgment as follows:

### I.  INTRODUCTION

Plaintiff, James Fonteneaux ("Fonteneaux"), brought this civil action against Defendants
Shell Oil Company and Shell Information Technology International, Inc. (collectively "Shell"),
alleging race and age discrimination, retaliation and harassment in violation Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. § 2000e; the Civil Rights Act of 1991, 42 U.S.C. §
1981a; the Civil Rights Act of 1871, 42 U.S.C. § 1981; the Age Discrimination in Employment
Act of 1967, 29 U.S.C. § 621 *et seq*., and their related anti-retaliation regulations.

Defendants now seek summary judgment as a matter of law on Fonteneaux's claims.
However, Defendants' summary judgment motion contains a plethora of genuine issues of
material facts that preclude a grant of summary judgment.  In their summary judgment motion,

Defendants argue that:  (1) Fonteneaux cannot recovery under a pattern and practice because he is not part of a class of plaintiffs; (2) Fonteneaux's failure to promote claim is inappropriate because he did not seek a promotion, but rather sought to be hired by Shell; (3) Fonteneaux cannot meet his prima facie case for race discrimination because he was not qualified for the SRAM position and Defendants have a legitimate nondiscriminatory reason for terminating Fonteneaux (i.e his position was eliminated and he failed to find another position within Shell); (4) Fonteneaux cannot meet his prima facie case for age discrimination because the selectees were not "substantially younger" than Fonteneaux; (5) Fonteneaux's retaliation claim fails because there is no casual connection between the discriminatory conduct and Fonteneaux's protected activity; and (6) Fonteneaux's harassment claim fails because it is unsubstantiated by his deposition testimony.

Here, Fonteneaux's summary judgment evidence precludes a grant of summary judgment on each of the Defendants' contentions.  First, Fonteneaux has produced sufficient summary judgment evidence that raises a genuine issue of material fact that he was more than qualified than his counterparts for at least four promotions he was denied by Defendants because of his race and age.  Second, Fonteneaux has provided sufficient summary judgment evidence that raises a genuine issue of material fact that he was more qualified for the SRAM position than the selectees and yet was denied the position and was subsequently terminated because of his race.

Third, Fonteneaux has provided sufficient summary judgment evidence that raises a genuine issue of material fact that he was treated differently because of his race and paid a lower salary than other non-African-American employees who held the same or similar position. Fourth, Fonteneaux has provided sufficient summary judgment evidence that raises a genuine issue of material fact that he was retaliated against after he complained of the Defendants'

discriminatory conduct.   Finally, Fonteneaux has provided sufficient summary judgment evidence that raises a genuine issue of material fact that he was subjected to racial harassment. The disputed evidence clearly raises genuine issues of material fact in this case that preclude a grant of summary judgment.

## II.  SUMMARY AND FACTS[1]

Fonteneaux, a long-time employee of Shell, contends that he was discriminatorily denied several promotions and ultimately terminated because of his race and age.  The Defendants contend that Fonteneaux (1) was denied a promotion to the SRAM position because he was not qualified for the position, and (2) was ultimately terminated because he could not find a new position within Shell after his SRM position was eliminated and changed to a SRAM position.

The Defendants' story from the outset is inconsistent and raises doubt.  Mike Rose, the CIO, was allegedly hired with the vision to transform the SR&P operation into a sales and procurement operation.   However, Rose's first step was to appoint Jay Crotts as Manager of Strategic Relations and Procurement (SR&P) to execute his vision when Crotts had no sales experience and very minimal procurement experience.  (See Exhibit A; see also Deposition of Mike Rose, attached hereto as Exhibit "C", at 44).   Crotts had to obtain the services of Fonteneaux and five(5) other SRMs in order to learn how to manage the position. Rose attempted to justify his decision to appoint Crotts by stating that he made Crotts the interim manager to "tighten up" the procurement piece first so he could later replace him with a manager who had experience in sales.

After going through great effort to "tighten-up" the procurement piece, Rose later appointed Kristine Moore, who had no experience in procurement, as Manager of Strategic

---

[1] The facts are detailed in Fonteneaux's affidavit, attached hereto as Exhibit "A" and incorporated herein for all purposes.

Relations and Procurement. (Id.)    Fonteneaux applied this position, was more qualified than Moore for this position and yet was rejected.  (See Exhibit A).  Moore's alleged first objective, with Rose's approval, was to entirely eliminate the procurement piece (which included replacing all the SRMs Crotts put in place) and transform SR& P to only a sales operation.

Moore then replaced Fonteneaux with members outside of his protected class, promoted them to higher positions and paid them higher salaries.  (Id.).  Fonteneaux's summary judgment evidence shows, however, that he applied for the same positions and was rejected notwithstanding the fact that he was more qualified than the selected individuals.

The summary judgment evidence reveals that there are genuine issues of material fact that remain regarding whether the Defendants' alleged reasons for failing to promote and ultimately terminating Fonteneaux are pretext.  Specifically, the summary judgment evidence reveals that there are unresolved genuine issues of material fact that remain regarding (1) whether Fonteneaux was in fact qualified for the SRAM position,[2] and (2) whether Fonteneaux's SRM position was actually eliminated and changed to a SRAM position.[3]

In reviewing the evidence in the light most favorable to Fonteneaux, as the Court must, it is apparent that unresolved genuine issues of material fact remain that preclude a grant of summary judgment in this case.  Accordingly, the Defendants' summary judgment motion should be denied.

---

[2] Based on the job description for the SRAM position and Fonteneaux's extensive background in sales and procurement, a genuine issue of material fact remains regarding whether he was more qualified for the position than those selected.
[3] Based on the fact that the SRM and SRAM job duties were identical, Steve Hamil remained in the positions with no sales experience, and the company policy that the position did not materially change, a genuine issue of material fact remains regarding whether Fonteneaux's SRM position was actually eliminated and changed to SRAM.

Once Moore replaced the existing SRM employees with new SRAM employees, she assisted all of the white SRMs with obtaining other positions within Shell, but refused to assist Fonteneaux. As a result, Fonteneaux was the only SRM employee terminated.

### III.  ARGUMENTS & AUTHORITIES

**A.  Summary Judgment Standards**

To prevail on a motion for summary judgment, a defendant must show from the evidence that there is **"no genuine issue as to any material fact."**  FED. R. CIV. P. 56(c) (emphasis added). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*  A genuine issue is one that can be resolved only by a trier of fact because it may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996).

To determine whether there is a genuine issue of material fact, the Court must consider the summary judgment proof in the light most favorable to Fonteneaux as the nonmovant. *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996); *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 525 U.S. 1103 (1999).  It therefore follows that, in entertaining a motion for judgment as a matter of law, the Court should review all of the evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2110 (2000) (*citing Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)); *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1412 (5th Cir.1993).

In doing so, however, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Id.*

5

(citations omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. (*citing Liberty Lobby,* 477 U.S. at 255).  Thus, although the Court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  That is, the Court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses. *Id*.

In the context of summary judgment, if there is a conflict in evidence to create a jury question on the issue of discrimination, summary judgment is precluded.  *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 983 (5th Cir.1996) (en banc).

In entertaining a motion for judgment as a matter of law, the court should review all the evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2110 (2000).  In *Reeves*, the Supreme Court granted certiorari to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision is adequate to sustain a finding of liability for intentional discrimination. *Reeves*, 120 S.Ct. at 2104.  The Supreme Court ruled that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.[4]  *Id.* at 2109.

Here, summary judgment is improper because there are numerous unresolved genuine issues of material fact regarding Fonteneaux's claims.

---

[4]The Court ruled that because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination. *Reeves,* 120 S.Ct. at 2109.

**B.      Fonteneaux Raises Genuine Issues of Material Fact on his Disparate Treatment Claims**

Defendant first alleges that Fonteneaux erroneously relies upon a pattern and practice theory and that such theory of recovery is not available to him individually.   However, Fonteneaux sues under the recovery theory of disparate treatment and raises genuine issues of material fact under the theory of disparate treatment, which is laid out in detail below. Fonteneaux provides sufficient evidence that his non-African-Americans counterparts received more favorable treatment in employment than he did, including but not limited to, pay, promotions and other tangible employment opportunities.   Therefore, Defendants' Motion for Summary Judgment should be denied.

**C.      Fonteneaux Raises Genuine Issues of Material Fact on His Failure to Promote Claim**

Defendants argue that Fonteneaux's failure to promote claim is inappropriate because he did not seek a promotion.   Rather, according to Defendants, Fonteneaux sought a new SRAM position, which was a different position from the SRM position Fonteneaux previously held. However, Fonteneaux was discriminatorily denied at lease four promotions prior to the SRAM posting and application.   Specifically, Defendants denied Fonteneaux a promotion as: (1) Category Manager- IT Hardware; (2) Category Manager- IT Software; (3) Manager Strategic Relations & Procurement; and (4) Manager of Strategic Relations & Procurement.  (See Exhibit A, at 7-9).

To prevail on his failure to promote claim, Fonteneaux must establish: (1) he is within a protected class; (2) he was qualified for the position; (3) he was not selected; (4) the position was filled by a person outside his protected class.  *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001).  To establish the fourth element, a plaintiff may either show that he was replaced

by someone outside of his protected class or was otherwise discriminated against because of his race [or age]. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223-24 (5th Cir. 2000); *see also Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

After the plaintiff has established his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998) (*citing Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc)). Once the defendant meets this burden, the plaintiff must demonstrate that the defendant's proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination. *Rhodes*, 75 F.3d at 993.

    1.    <u>Fonteneaux Clearly Established His Prima Facie Case</u>

First, it is undisputed that Fonteneaux is within a protected class, African-American and fifty five (55) years of age. (See Exhibit A, at 1). Secondly, Fonteneaux was qualified for each promotion he sought:

    (a)    Category Manager – IT Software. This position required extensive contract and procurement experience on a global level. (Id. at 8). At the time, Plaintiff had been employed with Shell for almost three decades and had 14 years experience in global contracting and procurement. Plaintiff was clearly qualified for this position. (Id.).

    (b)    Category Manager – IT Hardware. This position required extensive contract and procurement experience on a global level. (Id.). Plaintiff was clearly qualified for this position, as he had 14 years experience in global contracting and procurement. (Id.).

(c)     Manager Strategic Relations & Procurement. This position required extensive experience in IT, procurement and supplier relations.  (Id. at 8; see also Exhibit B). Fonteneaux had almost three decades experience with Defendants, which included extensive work in procurement, supplier relations with major vendors, management, sales and consulting experience.  (See Exhibit A, at 8).

(d)     Manager of Strategic Relations & Procurement. This position required extensive experience in IT, procurement and supplier relations.  (Id.; see also Exhibit B). Fonteneaux had almost three decades experience with Defendants, which included extensive work in procurement, supplier relations with major vendors, management, sales and consulting experience.  (See Exhibit A, at 8).

Though Plaintiff was qualified for each position, he was not selected and the positions were filled by persons outside his protected class.

Specifically, a novice, Ashley Bates (white-male under forty years of age) filled the Category Manager- IT Software position.  (Id.).  Bates had no global experience in contracting and procurement and had only been working with Shell for four years, while Fonteneaux had been employed with Shell for almost three decades and had 14 years experience in global contracting and procurement.  (Id. at 8).  In fact, Fonteneaux previously trained Bates and had to subsequently assist Bates on a global contract with a major vendor because Bates was unqualified for the position.  (Id.).

The Category Manager – IT Hardware position was also filled by a novice, Cindy Knox (white-female under forty years of age).  Knox had no global experience in contracting and procurement and no IT procurement experience.  (Id. at 8).   Fonteneaux, on the other hand, had been working in global procurement, contracting and IT for the previous 14 years at Shell.  (Id.).

The Manager Strategic Relations and Procurement position was filled by Jay Crotts (white male). Rose testified in his deposition that Crotts did not have the requisite experience for this position and was clearly unqualified; yet, Defendants denied Fonteneaux the promotion and selected Crotts over Fonteneaux. (See Exhibit C, at 44). Furthermore, Crotts had absolutely no experience in procurement and supplier relations. (See Id.; see also Exhibit A, at 8). Fonteneaux had almost three decades experience with Defendants, which included extensive work in procurement, supplier relations with major vendors, management, sales and consulting experience. (See Exhibit A, at 8).

Additionally, Defendants selected Kristine Moore (white-female) who had no experience in IT, supplier relations and procurement for the Manager Strategic Relations and Procurement. Even Rose, the individual who selected Moor, testified under oath that Moore did not have the requisite procurement experience need for this position. (See Exhibit C, at 44). Moore had minimal sales experience and had no knowledge of the existing SRM position. Fonteneaux, on the other hand, had extensive sales, IT, and procurement experience and had great knowledge of the SRM role as he had previously held the position. (See Exhibit A, at 7).

Still, Fonteneaux was denied the promotion and the job was given to Moore, a white female with lesser qualifications. Ironically, Fonteneaux trained Moore when she was promoted into the Manager of Strategic Relations & Procurement.[5] (Id.).

Fonteneaux also provided evidence that his non-African-Americans counterparts received more favorable treatment than he did. First, Fonteneaux was paid a lower wage than his non-African-American counterparts who held the same or similar position has him. Specifically,

---

[5] Defendants never dispute Fonteneaux's qualifications for these promotions throughout its summary judgment motion. Rather, Defendants solely focuses on Fonteneaux's qualifications for the SRAM position, which is specifically addressed below.

Rick Downes (white male), Randy Segotta (white male), Billy Euell (white male) and Jan Boteman (white male) were paid up to 38% more than Fonteneaux for the SRM position. (See Exhibit D). At the time, Fonteneaux had seniority over each of these employees and more experience.

Second, Fonteneaux sought a Senior Leadership assignment with Defendants but was told by his manager, Jim Niekirk, that he would not get the assignment because Fonteneaux was African-American. (See Exhibit A, at 3-4). Fonteneaux was also denied the same pay grade for an identical position held by Steve Magaldi (white male) and Kevin Frank (white male). (Id.). Again, Fonteneaux had seniority over these employees and had more experience but paid less.

Lastly, when Moore replaced the existing SRM employees with new SRAM employees, she assisted all of Fonteneaux's white counterparts in finding a new job within Shell, but refused to assist Fonteneaux. (Id. at 9). As a result, Fonteneaux was the only SRM employee terminated.

2.      Defendants' Alleged Reason For Not Promoting Fonteneaux is Pretext

Defendants allege that its reason for not promoting Fonteneaux is because he was not qualified for the positions. Based on the evidence submitted by Defendants, however, unresolved genuine issues of material facts remain regarding whether the Defendants' alleged reason is true or simply pretext.

Fonteneaux had almost three decades worth of experience with Defendants, which included extensive IT, supplier relations, procurement, management, sales and consulting experience. (See Exhibit A). Yet, Defendants denied Fonteneaux promotions in IT Hardware and Software and selected two novices, Bates and Knox. Both selectees had no global experience in contracting and procurement. (Id. at 7-8).

Defendants also promoted Crotts from the SRM position to Manager Strategic Relations and Procurement.  Fonteneaux previously held the SRM position as Crotts, but Crotts admittedly did not have the requisite experience for the promotion.  (See Mike Rose Deposition, Exhibit C, at 44).  Still, Defendants denied Fonteneaux the promotion and selected Crotts over Fonteneaux. Additionally, Fonteneaux was denied a promotion to the position of Manager Strategic Relations & Procurement, which required extensive supplier relations, procurement, and IT experience on a global level.  Defendants selected Moore for this position with minimal sales experience and no global IT and procurement experience.  (See Mike Rose Deposition, Exhibit C, at 59). Again, Fonteneaux was denied this promotion and the job was given to Moore, a white female with lesser qualifications.

In reality, Bates, Knox, Crotts and Moore were not qualified for these positions.  Rather, this is a facade that the Defendants want the Court to accept.  Truth be told, Defendants arbitrarily and discriminatorily denied Fonteneaux, the more qualified employee, these promotions because of his race and age.

In *Reeves*, the Supreme Court ruled that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  Here, Fonteneaux has established his prima facie case along with sufficient evidence for a jury to find that the Defendants' asserted reason for not promoting him (lack of qualifications) is completely false. Based on the evidence, a jury could reasonably conclude that the Defendants' alleged reason is false and the Defendants discriminated against Fonteneaux because of his race and age. Accordingly, because there are conflicts in evidence to create jury questions on the issues of race

and age discrimination, summary judgment is precluded. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc).

Moreover, in reviewing the evidence in the light most favorable to Fonteneaux, there is clearly conflicting evidence regarding whether Fonteneaux was denied these promotions because he was unqualified. Therefore, a genuine issue of material fact remains that precludes a grant of summary judgment. Accordingly, the Defendants' summary judgment motion should be denied.

**D.    Fonteneaux Raises Genuine Issues of Material Fact on His Race Discrimination Claim Surrounding his Termination**

Defendants argue that Fonteneaux's race discrimination claim fails because he was not qualified for the SRAM position and they have a legitimate discriminatory reason for his termination. However, there are genuine issues of material fact as to whether Fonteneaux was qualified for the SRAM position and whether Defendants' reason for Fonteneaux's termination is true.

To prevail on his race discrimination claim, Fonteneaux must establish: (1) he is within a protected class; (2) he was qualified for the position; (3) he was not selected; (4) the position was filled by a person outside his protected class. To establish the fourth element, a plaintiff may either show that he was replaced by someone outside of his protected class or was otherwise discriminated against because of his race. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223-24 (5th Cir. 2000); *see also Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

After the plaintiff has established his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998) (*citing Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir.1996) (en banc)). Once the defendant meets this burden, the

plaintiff must demonstrate that the defendant's proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination. *Rhodes*, 75 F.3d at 993.

> 1.     <u>Fonteneaux Clearly Established His Prima Facie Case</u>

First, it is undisputed that Fonteneaux is within a protected class, African-American. (See Exhibit A, at 1). Secondly, Fonteneaux was qualified for the SRAM position. Defendants allege that Fonteneaux was not qualified for the new SRAM position because he did not have the required external sales experience. However, outside sales experience was never a requirement for this position. (See Exhibit B). Moreover, Defendants inadvertently admit Fonteneaux had outside sales experience prior to the SRAM posting. Defendants acknowledge in their summary judgment motion that Shell Services International ("SSI") provided IT services internally and externally. (See Def's motion for summary judgment, at 1). From 1998 until 2001, Fonteneaux provided these outside services in IT and sales to external business while employed in SSI. (See Exhibit A, at 8).

Most importantly, the SRM and SRAM positions were identical. Rose did not implement a new strategic relations program or strategic relations idea that had not already in existence at Shell.[6] (Id. at 8-9). The SRM position had long been posted, implemented and effectuated at Shell years before Rose's employment with Shell. (Id.). Furthermore, Human Resources at Shell admitted that the SRM and SRAM positions were so identical that, in all actuality, Moore was not authorized to rename the SRM position to SRAM. (See Exhibit E).

The truth of the matter is that the job responsibilities and duties remained the same for these positions and nothing changed in SR&P as alleged by Defendants. (See Exhibit A, at 8-9). Accordingly, Fonteneaux was qualified to perform the duties of the SRAM position.

---

[6] In fact, the strategic ideas Defendants allege Rose sought to implement were rejected by Rose's previous employer, HP. Furthermore, these strategic ideas were never implemented at Shell.

Moreover, the selectees for the SRAM positions were less qualified than Fonteneaux. Ann Perrin (white female) and Jane Dancer (white female) were the first hires for the SRAM position. The face of Ann Perrin's resume clearly shows she did not have the 10-15 years experience required for the SRAM position. (See Perrin's Resume, attached hereto as Exhibit "F"). Jane Dancer too was unqualified for the SRAM position, as she too did not have the requisite 10-15 years experience. (See Dancer's Resume, attached hereto as Exhibit "G"). Steve Hamil (white male) a SRM, was hired into the SRAM position, despite no outside sales experience and less seniority than Fonteneaux. (See Mike Rose Depo., at 72).

Fonteneaux held the SRM position and had almost three decades worth of experience with Defendants, which included extensive IT, supplier relations, procurement, management, sales and consulting experience at the time he was denied the SRAM position. (See Exhibit A). Fonteneaux, undoubtedly, was the more qualified employee. Still, Defendant refused to allow Fonteneaux to continue his same job duties in the SRAM position. Furthermore, when Moore replaced the existing SRM employees with new SRAM employees, she assisted all of Fonteneaux's white counterparts in finding a new job within Shell, but refused to assist Fonteneaux. (Id. at 9). As a result, Fonteneaux was the only SRM employee terminated.

Fonteneaux also provided evidence that his non-African-Americans counterparts received more favorable treatment than he did. Fonteneaux was paid a lower wage than his non-African-American counterparts who held the same or similar position has him. Specifically, Rick Downes (white male), Randy Segotta (white male), Billy Euell (white male) and Jan Boteman (white male) were paid up to 38% more than Fonteneaux for the SRM position. (See Exhibit D). At the time, Fonteneaux had seniority over each of these employees and had more experience. (See Exhibit A, at 4).

Fonteneaux also sought a Senior Leadership assignment with Defendants but was told by his manager, Jim Niekirk, that he would not get the assignment because Fonteneaux was African-American.  (See Exhibit A, at 3-4).   Fonteneaux was also denied the same pay grade for an identical position held by Steve Magaldi (white male) and Kevin Frank (white male) (See Exhibit A, at 4).   Again, Fonteneaux had seniority over these employees and had more experience but paid less.  (Id.).

2.    Defendants' Alleged Reason For Terminating Fonteneaux is Pretext

Defendants allege that its reason for terminating Fonteneaux is because he was not qualified for the SRAM position and failed to find another position.  Based on the evidence submitted by Defendants, however, unresolved genuine issues of material fact remain regarding whether the Defendants' alleged reason is true or simply pretext.

The selectees for the SRAM positions were less qualified than Fonteneaux.  Fonteneaux held the SRM position and had almost three decades worth of experience with Defendants, which included extensive IT, supplier relations, procurement, management, sales and consulting experience at the time he was denied the SRAM position. (See Exhibit A).   Fonteneaux, undoubtedly, was the more qualified employee.  Still, Defendant refused to allow Fonteneaux to continue his same job duties in the SRAM position.  Furthermore, when Moore replaced the existing SRM employees with new SRAM employees, she assisted all of Fonteneaux's white counterparts in finding a new job within Shell, but refused to assist Fonteneaux.  (Id. at 9).  Fonteneaux was the only SRM employee terminated.  Fonteneaux also provided evidence that non-African-Americans received more favorable treatment than he did in pay and promotions.

In reality, the Fonteneaux was more qualified than selectees for the SRAM positions. The SRAM posting did not require outside sales, experience which rendered Fonteneaux,

according to Defendants, unqualified. Truth be told, Defendants arbitrarily and discriminatorily refused to allow him to continue is job duties under the SRAM position, which was identical to the SRM position, terminated Fonteneaux, the more qualified employee, and refused to assist him to stay with the company, unlike his white counterparts, because of his race.

In *Reeves,* the Supreme Court ruled that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.   Here, Fonteneaux has established his prima facie case along with sufficient evidence for a jury to find that the Defendants' asserted reason for terminating him (lack of outside sales experience) is completely false.   Based on the evidence, a jury could reasonably conclude that the Defendants' alleged reason is false and the Defendants discriminated against Fonteneaux because of his race. Accordingly, because there are conflicts in evidence to create jury questions on the issues of race discrimination, summary judgment is precluded.  *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc).

Moreover, in reviewing the evidence in the light most favorable to Fonteneaux, there is clearly conflicting evidence regarding whether Fonteneaux was terminated because he did not have outside sales experience.  Therefore, a genuine issue of material fact remains that precludes a grant of summary judgment.  Accordingly, the Defendants' summary judgment motion should be denied.

**E.**     **There is a Genuine Issue of Material Fact as to Fonteneaux's Racial Harassment Claims against Defendants**

To establish a prima facie case of racial harassment, Fonteneaux must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or

privilege of employment; and (5) Defendants knew or should have known of the harassment in question and failed to take prompt remedial action. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001).

Defendant fails to adequately address Fonteneaux's harassment claim. First, it is undisputed that Fonteneaux belongs to a protected group, African-American. Second, Fonteneaux has produced evidence that he was subjected to unwelcome harassment by management because of his race. Specifically, Fonteneaux sought a Senior Leadership assignment with Defendants but was told by his manager, Jim Niekirk, that he would not get the assignment because Fonteneaux was African-American. (See Exhibit A, at 3-4). Fonteneaux was also denied the same pay grade for an identical position held by Steve Magaldi (white male) and Kevin Frank (white male). (Id. at 4). Fonteneaux had seniority over these employees and had more experience but paid less.

Additionally, Fonteneaux was continually paid a lower wage than his non-African-American counterparts who held the same or similar position has him throughout his employment with Defendants. Specifically, Rick Downes (white male), Randy Segotta (white male), Billy Euell (white male) and Jan Boteman (white male) were paid up to 38% more than Fonteneaux for the SRM position. (See Exhibit D). Again, Fonteneaux had seniority over each of these employees and more experience.

Moreover, Moore assisted all of Fonteneaux's white counterparts find a new job within Shell when Moore replaced the existing SRM employees with new SRAM employees, but refused to assist Fonteneaux. (See Exhibit A, at 9). As a result, Fonteneaux was the only SRM employee terminated. These acts of harassment obviously affected a term, condition, and privilege of Fonteneaux's employment with Defendants.

18

Fonteneaux complained of the above-mentioned harassment on each occasion and, therefore, Defendants knew or should have known of the harassment in question and failed to take prompt remedial action.  (See Exhibit A, at 4).

Reviewing the evidence in the light most favorable to Fonteneaux, there is clearly conflicting evidence regarding whether Defendants subjected Fonteneaux to unwelcome acts of racial harassment.  Therefore, a genuine issue of material fact remains that precludes a grant of summary judgment.  Accordingly, the Defendants' summary judgment motion should be denied.

**F.** **There is a Genuine Issue of Material Fact as to Fonteneaux's Retaliation Claims against Defendants**

To make a claim for retaliation, Fonteneaux must show: (i) that the employee engaged in activity protected by Title VII; (ii) the employer took adverse employment action against the employee; and (iii) a causal connection exists between the protected activity and the adverse employment action.   *See Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

Defendants allege Fonteneaux did not engage in any protected activity.  This is not true.  First, it is undisputed that Fonteneaux complained to management throughout his employment with Shell regarding racial discrimination.  (See Exhibit A, at 4; see also Exhibit J).  Fonteneaux complained of acts of racial harassment against him and other African-Americans.  Furthermore, Fonteneaux complained of racial slurs in the workplace. (Id.). After each complaint, Defendants took adverse employment actions against Fonteneaux.  Specifically, Shell denied Fonteneaux employment opportunities, pay raises, and subsequently terminated his employment in retaliation for his complaints.  (See Exhibit A).

On one particular occasion, Fonteneaux sought a Senior Leadership assignment with Defendants.  Fonteneaux had seniority and more experience than the other candidates.  (Id. at 3).

However, Fonteneaux was told by his manager, Jim Niekirk, that he would not get the assignment because Fonteneaux was African-American. (Id. 3-4). Fonteneaux immediately complained to HR. (Id. at 4). Though Fonteneaux was eventually given the title to the position, Shell denied him the same pay grade that was given to the two other white selectees. (Id.). Defendant's acts were not by coincidence, but direct acts of retaliation against Fonteneaux for engaging in legally protected conduct.

Reviewing the evidence in the light most favorable to Fonteneaux, there is clearly conflicting evidence regarding whether Defendants retaliated against Fonteneaux for complaining of race discrimination. Therefore, a genuine issue of material fact remains that precludes a grant of summary judgment. Accordingly, the Defendants' summary judgment motion should be denied.

## CONCLUSION

In considering all the evidence in the light most favorable to Mr. Fonteneaux, it is clear that genuine issues of material fact exists in regards to: (1) whether Fonteneaux was discriminatorily denied the Category Manager- IT Software position because of his age and/or race; (2) whether Fonteneaux was discriminatorily denied the Category Manager- IT Hardware position because of his age and/or race; (3) whether Fonteneaux was discriminatorily denied the two Manager SR&P positions because of his race; (4) whether Fonteneaux was qualified for the SRAM position he previously held; (5) whether Shell's reason for Fonteneaux's termination is pretext; (6) whether Fonteneaux's disparity in pay and employment opportunities was due to racial harassment by Shell; and (6) whether Fonteneaux's disparity in pay and employment opportunities was a result of his previous complaints of racial discrimination. Accordingly, this Court should deny the Defendant's summary judgment motion in all respects.

Respectfully submitted,

/S/ Melvin Houston
_____

**Cletus Ernster, III**
State Bar No. 00793698
SD: 17822
**Mickey L. Washington**
State Bar No. 24039233
SD: 35786
**WASHINGTON & ERNSTER, LLC**
440 Louisiana, Suite 1930
Houston, Texas 77002
(713) 821-9433 office
(713) 821-9432 facsimile
**Melvin Houston**
State Bar No. 00793987
S.D. 20658
**E. Marie Jamison**
State Bar No. 24044647
S.D. 611126
**MELVIN HOUSTON & ASSOCIATES, P.C.**
2700 Post Oak Blvd., Suite 1350
Houston, Texas 77056
(713) 212-0600 office
(713) 212-0290 facsimile

## **CERTIFICATE OF SERVICE**

I certify that on June 11, 2007, a true and correct copy of the forgoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure via the Court's CM/ECF system, hand-delivery, certified mail, return receipt requested, regular mail, or facsimile to:

A.  Martin Wickliff, Jr.
Jennifer J. Cooper
Epstein, Becker, Green, Wickliff & Hall, P.C.
Wells Fargo Plaza, Suite 5400
1000 Louisiana Street
Houston, Texas 77002

/S/ Melvin Houston
_____
MELVIN HOUSTON

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JAMES FONTENEAUX** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. H-05-4033** |
| **VS.** | § | |
| | § | |
| **SHELL OIL COMPANY and SHELL** | § | **JURY TRIAL DEMANDED** |
| **INFORMATION TECHNOLOGY** | § | |
| **INTERNATIONAL, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Having considered the applicable law, pleadings and arguments of counsel, the Court is of the opinion that the Defendants' Motion for Summary Judgment should be denied.  It is therefore

ORDERED that the Defendants' Motion for Summary Judgment is hereby DENIED.

Signed this _____ day of _____, 2007.

_____
JUDGE PRESIDING

23