UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JAMES FONTENEAUX,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. H-05-4033** |
| | § | |
| **SHELL OIL COMPANY and** | § | |
| **SHELL INFORMATION** | § | |
| **TECHNOLOGY INTERNATIONAL,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 37).

For the reasons set forth below, Defendants' motion is **GRANTED**.[1]

### I. BACKGROUND

James Fonteneaux is an African American male and is fifty-five years old. He began

working for Shell Oil Company ("Shell") in 1976. Throughout his employment at Shell, he held

numerous procurement positions in various Shell businesses.

In July 2001, Shell's information technology ("IT") organization was restructured and

became Shell Information Technology International, Inc. ("SITI"). Also in 2001, Shell hired

Mike Rose as the Chief Information Officer ("CIO"), and he was responsible for creating a

single IT community out of SITI and Shell's various business units.

Rose implemented a new business function that he called "strategic relations," which he

sought to combine with the procurement function within SITI. He called this new function

---

[1] Defendants have also filed Objections to Plaintiff's Evidence in Response to Motion for Summary Judgment (Doc. No. 41). Those objections and Plaintiff's responses to them have been considered by the Court where necessary, but will not be ruled on individually.

"Strategic Relations and Procurement" ("SR&P"), and the plan was to reinvent procurement by "bringing in real expertise with sales experience to sit across the table from salespeople from the IT industry selling into [Shell]." (Def.'s Mot. Summ. J. Ex. B at 58, ll. 11-15.)  According to Rose's vision, a SR&P professional must have experience in outside sales, because only then would he or she understand the strategies used by the outside salesperson attempting to sell to Shell's procurement division.

Rose began implementing his SR&P plan by recruiting Jay Crotts to act as interim leader of the new SR&P department.  Crotts had experience in procurement, but not outside sales, so Rose instructed Crotts to focus on the procurement aspects of the SR&P department during his tenure.  Meanwhile, Crotts recruited an interim team of Strategic Relations Managers ("SRMs") to begin developing the new strategic relations function.  Fonteneaux was assigned to a SRM position in June 2002.

Because Crotts did not have the outside sales experience that Rose believed was necessary to manage the SR&P department, Rose conducted an external search for a permanent manager.  The initial search was unsuccessful, but Rose later offered the permanent position to Kristine Moore, a current Shell employee who had previously worked for IBM in outside sales. Moore was made Manager Strategic Relations & Procurement on July 1, 2003.

Moore was tasked with improving the strategic relations function of the SR&P department.  In doing so, she decided to eliminate the interim SRM role and create a new position called Strategic Relations Account Manager ("SRAM").  The SRAM position had all of same duties and responsibilities as the SRM position, but also had additional duties that the SRM position did not.   Moore and Rose maintained that extensive outside sales experience,

2

particularly experience making sales for a large external supplier to another large company, was a mandatory requirement for the SRAM position.

In the latter half of 2003, Moore began notifying her SRM team that the strategic relations role would be changing. She advised the SRMs that their position was going to be eliminated and that they should apply for other jobs within Shell. Eventually, a voluntary severance package was offered to all employees of SITI, including the SRMs.

Moore then began an informal search to fill the new SRAM roles, identifying two external candidates: Ann Perrin and Jane Dancer. Perrin's work experience included fourteen years with IBM in sales and marketing roles, four years with BMC Software, and three years in development of strategic account management systems with Critical Path Strategies, Inc. Dancer's work experience included twelve years of outside sales and strategic relations management with Cable & Wireless. Perrin was hired for a SRAM position in the United States, and Dancer, who lived in the United Kingdom, was hired for a SRAM position in the UK. In addition, Steve Hamil, a citizen of the UK, moved from a SRM position to the new SRAM position in the UK in accordance with UK law.[2]

The remaining new SRAM positions were then posted on Shell's internal job-posting system in August 2004. The posting indicated that "10-15 years of IT consultative selling and account management experience" was necessary qualification for the job. (Def.'s Mot. Summ. J. Ex. I at EBG(045)-5728.) Fonteneaux applied for a SRAM position. On August 24, 2004, the posting was closed and the applications were forwarded to Moore. She determined that none of the internal candidates was qualified for the position. Fonteneaux was notified on September 21,

---

[2] Rose and Moore did not believe that Hamil had the necessary outside sales experience to qualify for the SRAM role. However, Shell's UK human resources representatives advised Moore that UK law prohibited Shell from removing Hamil from his SRM role because the new SRAM position was not, in their opinion, more than 30% different from the SRM role. While Moore disagreed with this assessment, she followed the advice of the UK human resources department.

2004, that he was not chosen for the SRAM role. He was also told that his SRM position would end in October 2004, but that he would remain on the payroll until December 31, 2004, at which time his employment with Shell would end if he had not acquired another position.

Shortly thereafter, Fonteneaux complained about his failure to be selected for a SRAM role and other matters. He utilized Shell's voluntary dispute resolution program, and while pursuing mediation through this program, his employment was extended for an additional two months by allowing him to exhaust his vacation entitlements. During this time, Fonteneaux failed to secure another position within Shell, so his employment was terminated on February 28, 2005.

Meanwhile, in order to fill the remaining SRAM positions, Moore utilized a search firm to conduct an external search, primarily in Europe. Over the next eighteen months, Moore hired three new SRAMs: Gregg Parsley from the United States, and Mariella Antvelink and Boris Van Der Weele from the Netherlands. Parsley worked for IBM in exclusively sales roles for more than sixteen years. Antvelink worked for more than ten years at Gartner Research, selling and training in strategies of enterprise selling. Van Der Weele had more than ten years of experience in sales, having most recently worked for Microsoft selling to Philips Electronics.

Fonteneaux has since filed suit against Shell Oil and SITI, alleging race and age discrimination, retaliation, and harassment. Defendants seek summary judgment on all of Fonteneaux's claims.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the

4

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### III. RACE DISCRIMINATION

"Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Texas Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996). Title VII claims are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* at 802. Then, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, the burden shifts back to the plaintiff to produce evidence that (1) the defendant's articulated reason is not true, but rather pretext for discrimination ("pretext alternative"), or (2) the defendant's articulated reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic ("mixed motive alternative"). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

To establish a *prima facie* case of discrimination, a plaintiff must provide evidence that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an

5

adverse employment action; and (4) was replaced by someone outside the protected class. *Okoye v. Univ. of Texas Houston*, 245 F.3d 507, 512-13 (5th Cir. 2001).

In this case, Fonteneaux can unquestionably establish elements (1), (3), and (4) of his *prima facie* case. As an African American, he is a member of a protected class; he was subjected to an adverse employment action when he was not hired for or promoted to the SRAM position;[3] and those who were hired for the SRAM positions were White. However, Defendants maintain that Plaintiff cannot establish that he was qualified for the SRAM position, and thus has failed to make out a *prima facie* case of race discrimination.

The SRAM posting on Shell's internal job-listing system indicated that "10-15 years of IT consultative selling and account management experience" was necessary qualification for the job. (Def.'s Mot. Summ. J. Ex. I at EBG(045)-5728.) While Plaintiff's application for the SRAM position demonstrates that he had a great deal of valuable procurement experience, it does not appear to indicate that he had any sales experience. (Def.'s Mot. Summ. J. Ex. S.) Plaintiff argues in his Response that, from 1998 to 2001, he worked for a division in Shell (Shell Services International, or "SSI") that sold IT services externally. Even so, those three years of sales experience are far fewer than the 10-15 years of experience required for the job. Thus, based on the information contained in the application provided to Defendants, they were entitled to conclude that Plaintiff was not qualified for the SRAM position.

Plaintiff attempts to raise a question of fact regarding his qualifications by asserting in his affidavit that he had extensive sales and consulting experience and was more qualified than those who were selected for SRAM positions. However, this statement is not supported by any evidence, and unsupported affidavits setting forth conclusory facts are insufficient to defeat a

---

[3] The parties disagree whether this is a failure-to-promote or failure-to-hire case. Plaintiff contends there was a failure to promote, while Defendants maintain this must be a failure to hire claim because the SRAM role was an entirely new position. The Court does not believe the distinction is of significance to the legal analysis.

6

motion for summary judgment.  *Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

Plaintiff also argues that the SRM and SRAM positions were identical, so outside sales experience was not in fact a "real" requirement for the job.  He maintains that the job duties did not change, and because he was qualified for the SRM position, he was therefore also qualified for the identical SRAM position.  However, the job posting for the SRAM position listed on its face a requirement of ten to fifteen years of consultative sales experience.  If a company decides to impose additional qualifications for a particular position, it is not for a court to determine whether those additional qualifications are in fact necessary for the job, unless there is some evidence that they were imposed merely to discriminate.  Here, there is no such evidence.  The increased qualifications were imposed on all of the White SRMs as well as Plaintiff, and all of the White SRMs were found to be unqualified, just like Plaintiff.  Thus, the allegation that the SRAM position may not in fact have required the use of outside sales experience on a daily basis does not create a question of fact regarding Plaintiff's qualifications for the job.  The fact remains that he did not meet the qualifications listed in the job posting, Plaintiff has produced no evidence that the qualifications were imposed in order to discriminate, and so Plaintiff has failed to establish a *prima facie* case of discrimination.  Consequently, Defendants' motion for summary judgment on Plaintiff's race discrimination claim must be granted.

In addition to his failure to receive the SRAM position, Plaintiff argues in his Response to Defendants' summary judgment motion that there were several other promotions that he was denied because of his race throughout his employment with Shell.  Specifically, he claims that he was denied a promotion to Category Manager of IT Software, to Category Manager of IT Hardware, to the position of Manager SR&P that was filled by Crotts, and to the position of

Manager SR&P that was filled by Moore. In addition, Plaintiff argues that he was denied a promotion in pay grade by a former supervisor, Jim Niekirk, because of his race, and that he was discriminated against in compensation because of his race. None of these claims, however, was administratively exhausted.

First, Plaintiff failed to timely challenge many of these actions. Before bringing a lawsuit for discrimination under Title VII, a plaintiff is required to file a charge of discrimination with the EEOC. That charge must be filed within 300 days of the discriminatory act. 29 C.F.R. § 1601.13(a). In this case, Plaintiff filed a charge of discrimination with the EEOC on March 14, 2005. However, Plaintiff learned that he was not hired for the first Manager SR&P position when Crotts was hired no later than 2002, and that he was not hired for the second Manager SR&P position when Moore was hired in 2003. In both instances, more than 300 days passed before Plaintiff filed his EEOC charge, and thus he failed to timely exhaust his administrative remedies with regard to these allegations.[4] Similarly, Niekirk's alleged refusal to promote Plaintiff in pay grade occurred in 1997, well beyond the 300-day look-back period from the date Plaintiff filed his charge. This claim, therefore, was also not timely exhausted. Finally, Plaintiff's allegations that he was discriminated against in compensation must also be barred for failure to timely exhaust administrative remedies. The Supreme Court has recently held that because a pay-setting decision is a "discrete act," the period for filing an EEOC charge begins when the act occurs. *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2165 (2007). Plaintiff's most recent complaints of pay discrimination relate to his pay at his SRM position, which he began in 2002, and his pay was thus set at that time—more than 300 days before his

---

[4] Plaintiff does not provide any dates surrounding his claims that he was not promoted to Category Manager of IT Software or Category Manager of IT Hardware. The Court presumes that these promotions were denied Plaintiff before he was appointed to the SRM position in June 2002, and thus would likely be barred for failure to timely exhaust administrative remedies as well. However, as explained below, these claims also exceed the scope of Plaintiff's EEOC charge and are barred on that ground.

EEOC charge was filed.  Thus, his pay discrimination claims are likewise barred for failure to timely exhaust administrative remedies.

In addition to the fact that these claims were not timely filed, these claims of discrimination also exceed the scope of the EEOC charge.  A plaintiff is not required to assert all of his legal theories in an EEOC charge, but he is required to assert the facts that form the basis for his legal claims.  *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 795 (5th Cir. 2002).  In his EEOC charge, Plaintiff stated only:

> 1. I have been subjected to discrimination and harassment because of my age, and sex, which similarly situated younger employees and other employees were not treated in the same way.
> 2. I have been subjected to discrimination and harassment because of my race, age, and sex.  I also believe that I was retaliated against for complaining about this disparate treatment and other system abnormalities.

(Def.'s Reply Mot. Summ. J. Ex. C.)  Defendants responded to this charge with explanations for Plaintiff's failure to receive a SRAM position and his termination from the company.  Because of the very general allegations contained in the charge, the Court is persuaded that Defendants could not have been on notice that Plaintiff intended to challenge four other denied promotions, a denial of a pay grade increase, and allegedly discriminatory compensation.  Defendants' response to the EEOC charge indicates that they were not in fact on notice of these claims. (Def.'s Reply Mot. Summ. J. Ex. D.)  Thus, all of these additional claims must also be barred because they exceed the scope of the EEOC charge.

## IV. AGE DISCRIMINATION

Similar to Title VII, the ADEA prohibits employment discrimination based on age.  The burden-shifting framework of *McDonnell Douglas* applies to ADEA claims as well.  *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  Thus, Plaintiff must establish a *prima facie* case of

age discrimination by showing that (1) he is over the age of forty, (2) he was qualified for the position, (3) he was not selected for the position, and (4) the position was filled by someone outside the protected class. *Reeves v. Gen. Foods Corp.*, 682 F.2d 515, 520 n.7 (5th Cir. 1982).

Defendants contend that Plaintiff has failed to establish a *prima facie* case of age discrimination because, once again, he cannot show that he was qualified for the position. For the reasons explained above, the Court agrees. Plaintiff's application for the SRAM position did not meet the qualification requirements listed on the face of the job posting, so Plaintiff cannot establish a *prima facie* case of age discrimination.

In addition, Defendants contend that Plaintiff cannot establish the fourth prong of the *prima facie* case, which requires that the position be filled by someone outside the protected class. In this case, none of the individuals selected for the SRAM positions was under the age of forty. However, the Supreme Court has indicated that, in the age discrimination context, a showing that a worker was replaced by one substantially younger will suffice to establish a *prima facie* case. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996). Many courts interpreting the Supreme Court's decision have held that age differences of ten years or less are not significant enough to make out the fourth prong of a plaintiff's *prima facie* case. *See, e.g.*, *Balderston v. Fairbanks Morse Engine Div.*, 328 F.3d 309, 322 (7th Cir. 2003) (remarking that "substantially younger" generally means ten years younger); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003), *cert. denied*, 541 U.S. 1010 (2004) (difference of six years not significant, in the absence of direct evidence of discrimination); *Williams v. Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000) ("three year age difference is too insignificant to support a prima facie case of age discrimination"); *Hartley v. Wisc. Bell*, 124 F.3d 887, 892 (7th Cir. 1997) (age difference of six or seven years "presumptively insubstantial"); *Schiltz v.*

10

*Burlington N. R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997) (five year age difference not "substantial" and does not raise inference of discrimination).

In this case, only one SRAM was more than three years younger than Plaintiff: Greg Parsley, who was eight years younger than Plaintiff. Because none of the individuals hired as SRAMs were "substantially younger" than Plaintiff as that term has been interpreted by the federal courts, Plaintiff also fails to establish the fourth prong of his *prima facie* case of age discrimination. Thus, Defendants' motion for summary judgment on Plaintiff's age discrimination claim must be granted.

## V. RETALIATION

Plaintiff has also alleged that Defendants retaliated against him for complaining about discrimination. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Title VII retaliation claims are also subject to the now familiar burden-shifting framework established in *McDonnell Douglas*. 411 U.S. at 802.

In order to establish a *prima facie* case of retaliation, a plaintiff must prove "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). The Supreme Court has recently held that the anti-retaliation provision of Title VII is broader than the anti-discrimination provision and, accordingly, that a retaliation claim may arise from any action that a reasonable employee would find materially adverse, "which[,] in this context[,] means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

11

*Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (June 22, 2006) (internal quotation marks omitted).

While it is clear in this case that Plaintiff suffered an adverse employment action, Defendants argue that Plaintiff has not engaged in "protected activity" sufficient to support a retaliation claim. "Protected activity" includes opposing an employment practice that is unlawful under Title VII, making a charge of discrimination, or testifying, assisting, or participating in an investigation or proceeding under Title VII. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). Plaintiff appears to argue that his protected activity consisted of opposing unlawful employment practices. He contends that, in 1997, he complained to HR after his supervisor, Niekirk, awarded a grade level and corresponding salary increase to all individuals in his equivalent leadership position, but did not award the same to Plaintiff. In addition, Plaintiff asserts in his affidavit that he complained throughout his employment of racial harassment and racial slurs. While Plaintiff provides very few details regarding these alleged complaints, the Court is willing to conclude that Plaintiff engaged in protected activity sufficient to support a retaliation claim.

However, the Court is not persuaded that Plaintiff has established the third prong of the *prima facie* case, which requires him to demonstrate that a causal link existed between the protected activity and the adverse employment action. In order to establish this causal link, "the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). A plaintiff may establish causation by either direct or circumstantial evidence. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191-92 (5th Cir. 2001). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal

connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

In this case, there was not close timing between Plaintiff's complaints and the adverse action taken against him. The only complaint for which Plaintiff has provided a date is his 1997 complaint to HR about allegedly discriminatory pay. However, the only adverse employment action that Plaintiff has administratively exhausted, and thus the only action that he can challenge in this Court, is his failure to receive the SRAM position, which occurred in 2004. This significant expanse of time between complaint and adverse action fails to support an inference of a "causal connection."

In addition, Plaintiff has not provided any details about his alleged complaints of racial harassment or racial slurs. There is no evidence of when the alleged complaints were made, nor to whom they were made. Thus, the Court cannot conclude that the complaints were made so closely in time to the adverse employment action that a "causal connection" can be inferred.

Finally, because Plaintiff cannot show that the adverse action occurred closely in time to his protected activity, he must show that Defendants' decision not to give him a SRAM position was based in part on knowledge of his protected activity. The decision not to give Plaintiff a SRAM position was made by Moore, but Plaintiff has produced no evidence whatsoever that Moore was aware of any complaints of racial discrimination that Plaintiff made to HR. Plaintiff attempts to attribute knowledge to Moore by alleging that Moore was retaliating against him because he tried to get Moore removed from Shell's IBM account when Moore worked for IBM. Even if this were true, trying to get Moore off of the account would not constitute "protected activity" under Title VII unless Plaintiff could show that he did so because he thought Moore was engaging in activity that violated Title VII. Plaintiff has produced no evidence to this effect.

He has shown only that there were protected complaints of which Moore was unaware, and that there were unprotected complaints of which Moore may have been aware. On such a record, the Court must conclude that Plaintiff has failed to show the requisite causal link between his protected activity and the adverse employment action. Because Plaintiff has failed to establish a *prima facie* case of retaliation, Defendant's motion for summary judgment on the retaliation claim must be granted.

## VI. HARASSMENT

Finally, Plaintiff alleges that he was subject to unlawful racial harassment. A *prima facie* case of racial harassment alleging a hostile work environment normally requires the plaintiff to establish five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509-10 (5th Cir. 1999). However, where the harassment is allegedly committed by a supervisor with immediate (or higher) authority over the victim, the plaintiff needs to satisfy only the first four of these elements. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Once the plaintiff makes the four-part showing that he has been harassed by a supervisor, the employer is subject to vicarious liability for the supervisor's conduct. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001).

Plaintiff cites several examples of conduct that he contends constitutes racial harassment. First, he argues that, in 1997, when he sought a leadership position, his supervisor, Niekirk, told him that he would not get the assignment because he was African American. Then, when he

eventually obtained the position, he argues that he was denied the same pay grade awarded to White employees in the same position. However, as explained above, Plaintiff's complaints regarding this 1997 incident involving Niekirk were not timely exhausted administratively, nor were they within the scope of the EEOC charge that Plaintiff filed in 2005. Because Defendants were not put on notice that Plaintiff was complaining of this incident, Plaintiff is barred from raising it before this Court.

Plaintiff's second allegation of harassment is that four other individuals who held SRM positions—all White—were paid more than Plaintiff. However, Plaintiff has provided no evidence to support this assertion. The exhibit to which Plaintiff refers in his Response was not attached to his brief. Thus, because the only evidence of this alleged harassment are Plaintiff's unsupported conclusions in his affidavit, this claim cannot stand.

Finally, Plaintiff maintains that he was harassed because Moore assisted all of the White SRMs in finding other employment within Shell, but refused to assist Plaintiff. Once again, Plaintiff has provided no evidence to support this assertion. He relies solely on unsupported conclusory statements in his affidavit. Furthermore, Defendants have presented some evidence to the contrary in the form of an e-mail sent from Moore to Plaintiff, reminding him of the many jobs currently available within Shell and recommending several specific positions that might fit with Plaintiff's background and experience. (Def.'s Mot. Summ. J. Ex. R.) Thus, because all of the alleged instances of harassment against Plaintiff are barred or are unsupported by any admissible summary judgment evidence, Defendant's motion for summary judgment on Plaintiff's racial harassment claim must also be granted.

## VII. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is

**GRANTED** in its entirety.  Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** this 22nd day of August, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT